# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **LAURA A. DUHIGG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **8:15CV91** |
| | ) | |
| **GOODWILL INDUSTRIES, a** | ) | |
| **Nebraska nonprofit corporation,** | ) | **ORDER** |
| | ) | |
| **Defendant.** | ) | |

This matter is before the court on Plaintiff's Motion to Compel Discovery (Filing No. 49), Defendant's Motion for Protective Order (Filing No. 57), and the Joint Motion to Suspend Case Progression Deadlines (Filing No. 66).

## BACKGROUND

This action pertains to Plaintiff's allegations that Goodwill's treatment of her and termination of her employment violated federal and state laws prohibiting discrimination based on sex, disability, and retaliation. (Filing No. 12). Plaintiff worked at Goodwill for nine years in several positions, eventually attaining the position of store manager. (Filing No. 12 at p. 1). Throughout Plaintiff's employment with Goodwill, she reported to Rose Sloderbeck; Sloderbeck reported to her sister, Kay Hilgenkamp. Plaintiff alleges Goodwill began to treat her differently from other employees beginning in 2009, after she requested FMLA leave for surgery. Plaintiff alleges she overheard a conversation between Hilgenkamp, Sloderbeck, Shannon McGree, and two other Goodwill employees questioning whether Plaintiff was using FMLA leave for a sex change operation. (Filing No. 12 at p. 3). Plaintiff alleges she was subjected to "demeaning, disrespectful and harassing conduct" as "a regular component of her day-to-day work environment, which was known to and accepted by Goodwill management[.]" (Filing No. 12 at p. 12). Plaintiff alleges Goodwill

1

terminated her employment on August 14, 2013, based on her medically diagnosed disability and Goodwill's perception that Plaintiff is not a stereotypical female.   (Filing No. 12 at p. 1).

The current dispute concerns Goodwill's responses to Plaintiff's First Request for Production of Documents.   Plaintiff requested, among other items, "Any written or recorded statements from [Goodwill], its current and/or former employees, contractors, representatives or agents, concerning the allegations and defenses of this case," and "All documents Goodwill received from, sent to, or which otherwise refer to Plaintiff during her employment at Goodwill[.]"   (Filing No. 51-2 at p. 3).   On May 24, 2016, the parties began communicating by letters, telephone and email, regarding Goodwill's responses provided to Plaintiff on February 9, 2016, particularly with respect to Goodwill's production of emails.   (Filing No. 51-4).   On June 3, 2016, Goodwill informed Plaintiff that it searched emails maintained by Goodwill managers Hilgenkamp, McGree, Sloderbeck, Dave Pfeffer, and Randy Parks, between June 2012 to September 2013, for topics related to Plaintiff's absences or FMLA leave, complaints or investigations pertaining to Plaintiff, Plaintiff's written warning, and the events leading up to Plaintiff's termination.   (Filing No. 51-5 at p. 3).   Goodwill also searched Sloderbeck's emails for the following terms: socialize, "hate" from "Shannon McGree," harassment, gossip, medical leave or "FMLA" or "disability" or "accommodate," anxiety or stress, "unsocialized pit bull," appendage, "sex change," "team player," petty, "who they want me to be," surgery, terminat! in the same sentence as Duhigg or Laura in 2013, discriminat!, "warning or "final warning" in 2013, and treat* within 10 words of different*.   (Filing No. 51-5 at p. 3).   Plaintiff represents that Goodwill did not produce any emails resulting from this search.   (Filing No. 50 at p. 4).

After further discussion between the parties, Plaintiff requested Goodwill search for emails from the email accounts of Sloderbeck, McGree, and Hilgenkamp, retrieved using the search terms "Laura," "Duhigg," and "Laura Duhigg" for the four years preceding Plaintiff's termination.   (Filing No. 58 at pp. 2-6).   Goodwill performed the search using Plaintiff's requested search parameters, resulting in 14,500 "hits," which Goodwill estimates includes approximately 14,119 emails.   (Filing No. 49 at p. 2, ¶ 10).   Plaintiff filed the instant motion

2

to compel after Goodwill indicated it would not produce or review the emails due to the burden and expense to retrieve, format, and review the data. (Filing No. 51-6; Filing No. 49). Goodwill filed a related motion for protective order regarding the same request for production of emails. (Filing No. 57).

## DISCUSSION

Initially, Goodwill argues Plaintiff's motion to compel is not properly before the court because Plaintiff did not comply with the meet and confer obligations of NECivR 7.1(i) prior to filing the motion. In reviewing the letters and emails exchanged over several months between counsel regarding the current dispute, the court is satisfied that the parties sufficiently met and conferred in a sincere attempt to resolve this dispute. Additionally, both parties agree in their briefs that a discovery conference regarding the current dispute would be helpful. The court is amenable to conducting discovery conferences in light of the most recent amendments to the Federal Rules of Civil Procedure, and has done so previously in this case. However, Rule 16 contemplates that the movant may request a discovery conference "before moving for an order relating to discovery." Fed. R. Civ. P. 16(b)(3)(v). Plaintiff filed her motion to compel prior to the parties' request for a discovery conference, and therefore the opportunity for a discovery conference on this issue has passed.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Although relevance is broadly construed in the context of discovery, the party seeking discovery must make "[s]ome threshold showing of relevance . . . before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Once the requesting party meets the

3

threshold relevance burden, generally "[a]ll discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991).

> With respect to electronic discovery, the Federal Rules provide:
>
> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(2)(B). The court has authority to limit the scope of discovery. "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Plaintiff requests that Goodwill produce all emails over a four-year period using Plaintiff's name as search terms from the email accounts of her "most egregious harassers:" Hilgenkamp, Sloderbeck, and McGree. (Filing No. 50 at p. 8). Plaintiff has provided some email chains between Hilgenkamp, Sloderbeck, and/or McGree, wherein they discussed issues with the Plaintiff, the Goodwill store she managed, and speculated whether Plaintiff was seeing clients while on FMLA leave. (Filing No. 62-2 to 62-5). However, the court finds Plaintiff has not met her burden to show the relevance of her request for *all* emails that simply mention her name. The breadth of Plaintiff's request is demonstrated by the fact that over 14,000 emails are responsive to her request. Plaintiff's broad search request could include privileged information, sensitive confidential information about third parties, proprietary or confidential information, and a number of results with no relevance to this case. For example, another store manager named Laura worked at Goodwill during the same time

4

period as Plaintiff, and searching for "Laura" would turn up any number of emails regarding the other Laura. (Filing No. 59-10). Plaintiff's request appears to be merely a fishing expedition.

Additionally, Goodwill has demonstrated the data requested by Plaintiff is not reasonably accessible due to undue burden or cost. See Fed. R. Civ. P. 26(b)(2)(B). Plaintiff's requested search parameters produced 14,500 "hits." Goodwill states it has not collected or formatted the data for production, which it estimates will take two hours. (Filing No. 59-1 at pp. 5-6). Goodwill further estimates it would take approximately 235 hours to review the 14,119 emails, plus an additional ten to fifteen hours of review by defense counsel. Goodwill asserts it would incur a minimum of $45,825 in legal fees. (Filing No. 59-1 at p. 6; Filing No. 58 at p. 8). In consideration of the above, and in balancing the proportionality factors set forth in Fed. R. Civ. P. 26(b)(1), the court finds Goodwill should not be compelled to produce the emails responsive to Plaintiff's search terms.

Although the court agrees with Goodwill that Plaintiff's search terms are overbroad, the court disagrees with Goodwill's assertion that its search for emails outlined in its letter dated June 3, 2016, was an appropriate response to Plaintiff's requests. Goodwill limited its search for emails between June 2012 and September 2013 because any claim of alleged harassment or discrimination prior to 2013 is time-barred. (Filing No. 58 at p. 15). However, the scope of discovery is not so narrow. Prior discriminatory acts which are not actionable may nevertheless "be used as background evidence in support of a timely claim." *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 670 (8th Cir. 2006) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Plaintiff alleges she worked at Goodwill for a total of nine years, but began to be treated differently by Goodwill beginning in 2009, after she requested FMLA leave for surgery. Goodwill terminated Plaintiff's employment in 2013. The four-year time frame suggested by Plaintiff is appropriate to search for emails that may provide background evidence relevant to Plaintiff's timely claims of discrimination. Moreover, Goodwill unilaterally supplied its own search terms to search only one custodian's email account, without input from Plaintiff. Rather than attempt to

craft search terms for the parties, the court directs the parties to meet and confer and mutually agree upon search terms for Goodwill to use to search the email accounts of Hilgenkamp, Sloderbeck, and McGree, for the four-years predating Plaintiff's termination.

Finally, the parties have filed a Joint Motion to Suspend Case Progression Deadlines (Filing No. 66). The parties request an indefinite suspension of case progression deadlines because they are unable to determine the additional time necessary to complete discovery without an order on the pending discovery motions. With the entry of this order, the parties' motion for suspension of deadlines is now moot. The parties are directed to meet and confer and submit a joint motion and proposed amended progression order. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion to Compel Discovery (Filing No. 49) is denied.

2. Defendant's Motion for Protective Order (Filing No. 57) is granted, in part, and denied in part, as set forth above.

3. The parties are directed to meet and confer and mutually agree upon search terms of the email accounts of Hilgenkamp, Sloderbeck, and McGree for the four-years predating Plaintiff's termination.

4. The Joint Motion to Suspend Case Progression Deadlines (Filing No. 66) is denied as moot. The parties are directed to meet and confer and submit joint motion and proposed amended progression order on or before October 14, 2016.

DATED: September 16, 2016.

BY THE COURT:

s/ F.A. Gossett
**United States Magistrate Judge**